UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHRISTINE BOHLMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-573 CAN |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On September 22, 2006, Plaintiff Christine Bohlmann (Bohlmann) filed her complaint in

this Court.  On January 22, 2007, Bohlmann filed an opening brief and she asks this Court to

enter judgment in her favor or to remand this matter to the Commissioner.  On March 6, 2007,

Defendant Social Security Administration (SSA) filed its response brief.  On March 13, 2007,

Bohlmann filed her reply brief.  This Court now enters its ruling based upon the record of this

case that includes the pleadings, the motions, the administrative record, briefs of the parties, and

the arguments of counsel.

I.    PROCEDURE

On February 15, 2002, Bohlman filed her application for Disability Insurance Benefits

and Supplemental Security Income (Tr 13).  Bohlmann is insured for Disability Insurance

Benefits through June 9, 1998 (Tr. 329).  Bohlmann claims she is entitled to benefits pursuant to

Title II of the Social Security Act.   See 42 U.S.C. §§ 416(i), 423, 1381a.

On July 7, 2005, Bohlmann appeared at a hearing before an Administrative Law Judge

(ALJ), who issued a denial of Bohlmann's claim (Tr. 13-24).  The ALJ found that Bohlmann had

the residual functional capacity (RFC) to perform simple, unskilled work at the light exertional

level (Tr. 21).  As a result, the ALJ determined that Bohlmann could perform other work that existed in the economy (Tr. 23).

Bohlmann appealed the ALJ's decision to the Appeals Council.  (Tr. 5-7)  The Appeals Council denied review, and as a result, the ALJ's decision became the Commissioner's final decision (Id.).  20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005).  Consequently, on September 26, 2006, Bohlmann filed a complaint in this Court seeking a review of the ALJ's decision.  This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II.  ANALYSIS

### A.  Facts

Bohlmann was a 36 year old female at the time the ALJ denied her claims (Tr. 22).  She has a high school education and performed past work as an assembler (Tr. 72).

Bohlmann claims she suffers from fibromyalgia,[1] somatic cervical dysfunction, mixed headache syndrome, colon problems, depression, and anxiety disorder (Tr. 71, 337, 350).  More generally, Bohlmann claims she suffers from a lot of general pain all over her body (Tr. 338).  In a general day, Bohlman does some simple cooking and chores, takes care of her children, and sometimes makes dinner (Tr. 344-46).  For the rest of the day, Bohlmann needs to lay around and rest (Tr. 345).  She rarely travels except to her mother's house, her doctors' offices, and the occasional shopping trip (Tr. 348-49).

Bohlmann saw a number of doctors, but her main doctor was Todd Graham, M.D. (Dr. Graham).  Dr. Grahm first saw Bohlmann around January 26, 1996, at the request of an

---

[1]Fibromyalgia is a common syndrome of chronic widespread soft tissue pain accompanied by weakness, fatigue, and sleep disturbances, the cause of which is unknown.  Stedman's Medical Dictionary 725 (28th ed. 2006).

insurance company (Tr. 232).  In, 2002, Bohlmann began seeing Dr. Grahm more regularly for her problems (Tr. 222-234).  Around February 21, 2002, Dr. Grahm indicated that he had seen Bohlmann, and that she reports having chronic pain in her back and extremities, fatigue, weakness, headaches, colon problems, dizziness, altered sleep habits, and increased anxiety (Tr. 230).  He indicated that Bohlmann had a history of fibromyalgia with complaints of increased pain associated with stress and anxiety (Tr. 231).  On March 18, 2002, Dr. Grahm saw Bohlmann again, but indicated only that she complained of neck and back pain (Tr. 229).  On April 29, 2002, Dr. Grahm saw Bohlmann a third time, and he indicated that she was taking some medication, Trazodone and psychiatric medications (Tr. 228).  Bohlmann also saw Dr. Grahm a few times in 2004 in which she continued to complain of pain (Tr. 293-94).

Dr. Grahm filled out two fibromyalgia residiual functional questionnaires, which were dated July 22, 2002, and March 2, 2005 (Tr. 223-27, 297-301).  Dr. Grahm wrote various check marks throughout the questionnaires that indicated Bohlmann had fibromyalgia with pain, fatigue, tender points, stiffness, swelling, irritable bowel syndrome, numbness and tingling, dysmenorrhea,[2] anxiety, panic attacks, depression, severe headaches, and incoordination (Tr. 223-24).  He also indicated that she had pain in her shoulders, arms, hands, fingers, hips, legs, knees, ankles, and both feet (Tr. 224).  He indicated Bohlmann was not a malingerer and that she could only stand or sit for less than two hours (Tr. 224-25).  Dr. Grahm also indicated that Bohlmann suffered pain often, which was severe enough to interfere with her attention and concentration (Tr. 225).  Dr. Grahm felt Bohlmann could occasional lift 10 pounds or less but never 20 pounds or more (Tr. 226).

---

[2]Dysmenorrhea is difficult and painful menstruation.  Stedman's Medical Dictionary 598.

The issues this Court must resolve is whether the ALJ's determination to not award Bohlmann's treating physician controlling weight was supported by substantial evidence, and whether the ALJ failed to appropriately assess Bohlman's credibility.

B.    Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed de novo.  Haynes, 416 F.3d at 626.

C.    Bohlmann's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Bohlmann must establish that she was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: 1) the claimant

4

is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If there is an affirmative answer at either step three or step five, then there is a finding of disability.  Briscoe, 425 F.3d at 352.  At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  Id.

The ALJ found that the claimant retained the residual functional capacity to perform simple unskilled work at the light exertional level (Tr. 21).  Further, while the ALJ found that Bohlmann could not perform any past work, he found that she was capable of making a vocational adjustment to other work in the community (Tr. 22).  Bohlmann asserts two arguments attacking the ALJ's assessment.  First, Bohlman contends that the ALJ failed to give

the appropriate amount of deference to the opinions of her treating physician.  Second, Bohlman

contends that the ALJ improperly evaluated her credibility.

> 1.     <u>The ALJ's determination that the opinions of Bohlmann's treating</u>
>        <u>physician were not controlling is supported by substantial evidence</u>

Bohlmann contends that the ALJ erred by not assigning more evidentiary weight to the

opinions of her treating physician Dr. Grahm.  An ALJ is to give a treating physician's opinion

controlling weight if it is well supported by medically acceptable clinical and laboratory

diagnostic techniques and not inconsistent with other substantial evidence in the record.

<u>Hofslien v. Barnhart</u>, 439 F.3d 375, 376 (7th Cir. 2006).  "This rule . . . seems to take back with

one hand what it gives with the other, and as a result to provide little in the way of guidance to

either." <u>Id</u>. More weight is generally given to the opinion of a treating physician because he is

more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2);

<u>Clifford v. Apfel</u>, 227 F.3d 863, 870 (7th Cir. 2000).  However, a claimant is not entitled to

benefits merely because a treating physician labels her as disabled.  <u>Dixon v. Massanari</u>, 270

F.3d 1171, 1177 (7th Cir. 2001).   Medical evidence may be discounted if it is internally

inconsistent or inconsistent with other evidence in the record.  <u>Clifford</u>, 227 F.3d at 870.

However, the ALJ must avoid substituting his own opinion for that of the treating physician

without relying on medical evidence or authority in the record.  20 C.F.R. § 404.1527(d)(2);

<u>Clifford</u>, 227 F.3d at 870; <u>Rohan v. Chater</u>, 98 F.3d 966, 968 (7th Cir. 1996).  When evidence in

opposition to the presumption is introduced, the rule drops out and the treating physician's

evidence is just one more piece of evidence for the ALJ to weigh.  <u>Hofslien</u>, 439 F.3d.at 377

(citations omitted).  Unfortunately, there is no bright line for when a physician's opinion is

inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances.  Id.

The ALJ did not award Dr. Grahm controlling weight (Tr. 20).  The ALJ indicated that the form where Dr.Grahm provided most of his opinions was a fill-in-the-blank form, and the ALJ indicated the form did not establish whether Dr. Grahm had performed any diagnostic testing to support his findings (Id.).  Particularly, the ALJ pointed out one paragraph of the form was left blank where Dr. Grahm was to identify the clinical findings and laboratory or test results that showed Bohlmann's impairments (Id.).  Also, the ALJ was concerned that Dr. Grahm did not put any percentages in the handling or fingering problems area of the form even though Dr. Grahm indicated that Bohlmann was significantly limited in reaching, handling, or fingering (Id.).  Even though the ALJ accepted Dr. Grahm's diagnosis of fibromyalgia, he questioned Dr. Grahm's findings because Dr. Grahm indicated nothing regarding trigger points, which the National Fibromyalgia Association materials Bohlmann provided to the ALJ suggested were important (Tr. 21).

Bohlmann argues that the ALJ improperly rejected Dr. Grahm's opinion because he did not point out any contrary medical evidence to reject Dr. Grahm's opinions, and Bohlman argues that the ALJ impermissibly "played doctor."  This Court does not agree.

An ALJ is to consider the length of the treatment relationship and frequency of examination, extent of the treatment relationship, supportability through medical signs and medical findings, consistency, specialization, and any other factors.  20 C.F.R. § 404.1527(d)(1)-(6).  The better an explanation a source provides for an opinion, the more weight an opinion will be given.  20 C.F.R. § 404.1527(d)(3).  Medical evidence may be discounted if it is internally

inconsistent and if a treating physician's notes do not support the physician's ultimate opinion on a residual capacity form.  See Clifford, 227 F.3d at 870; Knight v. Chater 55 F.3d 309, 314 (7th Cir. 1995).

The ALJ reasonably explained that Dr. Grahm's explanations were inadequate to support his conclusions because he used a check box form and left explanatory parts of the form blank. The ALJ indicated that Dr. Grahm did not detail on the form what clinical findings or laboratory and test results showed Bohlmann's impairments.  Simply put, the ALJ reasonably found that Dr. Grahm's ultimate conclusions regarding Bohlmann's residual functional capacity were not adequately supported by his own submissions. The ALJ even notes, based on the evidence submitted by Bohlmann, that Dr. Grahm does not detail whether Bohlmann had 11 or more tender points of 18 as required by the National Fibromyalgia Association.  The ALJ's conclusion that Dr. Grahm's check box findings lacked support of objective medical evidence is not erroneous.  See Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001).  Rather, the ALJ's analysis not to award Dr. Grahm controlling weight was reasonable and supported by substantial evidence.

Bohlmann argues that the ALJ inappropriately looked for clinical findings with Bohlmann's fibormyalgia when the 7th Circuit has recognized in Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996) that there are no laboratory tests to verify the presence of fibromyalgia.  While Bohlmann is correct that pain in fibromyalgia cases cannot be detected by laboratory tests, the disease itself is typically diagnosed by the 18 point test.  See Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 919 (7th Cir. 2003).  In fact, the ALJ even indicated skepticism because Dr. Grahm's questionnaires never indicated using the 18 point test, even

though the ALJ accepts Dr. Grahm's ultimate diagnosis that Bohlmann has fibromyalgia.[3]

Therefore, while Bohlmann may be correct that there are no tests to confirm the objective

existence of fibromyalgia, that does not mean Dr. Grahm could not have explained how he

reached his diagnosis.  The ALJ reasonably pointed out that Dr. Grahm's conclusions were void

of any explanation, and that there were no objective tests done for the ALJ to assume how Dr.

Grahm reached his conclusion.  As a result, his conclusion not to award Dr. Grahm controlling

weight was supported by substantial evidence.

2.    The ALJ's determination of Bohlmann's credibility was not supported by substantial evidence

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his

credibility determinations are given special deference, and as a result, his credibility

determinations will only be overturned if they are patently wrong.  Jens v. Barnhart, 347 F.3d

209, 213 (7th Cir. 2003).  When an ALJ's determinations are based on objective factors rather

than subjective considerations, such as the claimant's demeanor, there is greater freedom to

review the ALJ's decision.  Clifford, 227 F.3d at 872 ("[W]hen such determinations rest on

objective factors or fundamental implausibilities rather than subjective considerations . . .

appellate courts have greater freedom to review the ALJ's decision.").  As a bottom line, Social

Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding.

---

[3]Bohlmann also argues that the ALJ impermissibly "played doctor" by substituting his opinion for that of a treating physician.  An ALJ impermissibly "plays doctor" when he substitutes his judgment for that of a physician without relying on other medical evidence or authority.  Clifford, 227 F.3d at 870.  Here, the ALJ relied on information from the National Fibromyalgia Association, which was provided by Bohlmann, in criticizing Dr. Grahm.  Also, the ALJ merely indicates his skepticism of Dr. Grahm's results.  At no point does the ALJ reject Dr. Grahm's diagnosis.  The ALJ only rejects Dr. Grahm's ultimate conclusions regarding Bohlmann's functional capacity.  The ALJ did not "play doctor" as Bohlmann suggests.

Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002).  While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations are not credible.  Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)); Golembiewski, 322 F.3d at 915.  Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms.  Zurawski v Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In the present case, the ALJ found "the claimant's testimony to be less than fully credible." (Tr. 20).  The ALJ went farther than this statement, however, and offered the following explanation for his finding:

> It further appears that claimant's allegations are exaggerated.  They are inconsistent with her activities of daily living.  She cares for her six-month-old infant and home schools her nine-year-old son.  She also significantly participates in the management of her home.

(Tr. 21).  At first blush, the ALJ's analysis appears adequate enough to satisfy the deferential standard this Court gives to an ALJ's credibility determination.  The ALJ offered an explanation for finding Bohlmann not to be credible, and the ALJ did not simply state that Bohlmann was not credible or simply list the factors from the regulations.  Consequently, this Court would not consider the ALJ's reasoning to be "patently wrong," except for the 7th Circuit decision in Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004), which compels a different result.

In Carradine the 7th Circuit faced a situation very similar to the one before this Court.  Specifically, the claimant alleged a disability based on subjective claims of severe pain caused by various conditions.  Severe pain can be totally disabling.  See eg. Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004); Zurawski, 245 F.3d at 889.  Where the medical signs and findings

reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations.  Zurawski, 245 F.3d at 887-88.  The ALJ in Carradine did not ignore the claimant's claims of pain, in fact, he acknowledge that pain can be disabling.  360 F.3d at 754.  However, the ALJ gave two reasons for disbelieving the claimant's testimony, one of which was that the ALJ found the claimant's testimony to be inconsistent with the activities she admitted to engaging in, such as performing household chores and taking long walks.  Id. at 755.  The 7th Circuit found this reasoning to be erroneous.

The 7th Circuit stated that a person's ability to engage in sporadic physical activity does not mean that person is able to work eight hours a day five consecutive days of the week.  Id.

> Activities such as walking . . . are not necessarily transferable to the work setting with regard to the impact of pain.  A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.

Id.  When the record contained several references to the claimant taking pain medication and doctor's reports that she was in pain, an analysis that a claimant is not credible because her claims are not consistent with her daily activities is insufficient.  Id. at 756 ("[A]n administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws.").

An ALJ's credibility determination is only disturbed when it is "patently wrong," which is supposedly a strict standard for reversal.  See Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 1993).  Carradine, however, does not follow this standard.  As Judge Coffey stated in his dissenting opinion in Carradine, "the majority has embarked upon a course of reasoning that is far afield of this principle."  Id. at 759 (Coffey, J., dissenting).   This Court, like others in the 7th

Circuit, is torn between the deferential standard that is to be given to an ALJ's credibility determination and the Carradine standard.  Compare Lawson v. Barnhart, 455 F. Supp. 2d 747, 772 (N.D. Ill. 2006) with Everaert v. Barnhart, 2004 WL 1446173 at 3 (W.D. Wis. 2004).  While this Court would normally find that the ALJ in the present case adequately explained his credibility determination of Bohlmann, the Carradine standard forces this Court to reach the opposite result.

While the ALJ indicated he considered Bohlmann's allegations of pain, his discussion regarding this issue was inadequate under Carradine.  Like Carradine, the ALJ in this case found Bohlmann's daily activities of living, specifically the ability to care for and school her children and her significant management of her home contradicted Bohlmann's claims of pain.  This explanation was the full extent of the ALJ's explanation regarding Bohlmann's credibility.  Also like Carradine, the record in this case is replete with instances that support Bohlmann's claims of pain.  In 1998, Brend W. Mohr, M.D. indicates several times that Bohlmann was in pain (Tr. 190-94).  Also in 1998, Chris W. Bryan, DC, indicated that Bohlmann was in pain, that she was severely limited as a result, and he suggested a proposed form of treatment (Tr. 162-166).  Dr. Graham indicates that Bohlmann is in pain (231, 294-95).  Mallikarajun Patta, M.D., indicates that Bohlmann is in pain from fibromyalgia (285-86).  Bohlmann herself indicated that she has taken pain medications, Flexeril and Codeine (Tr. 343-44).  As a consequence, as Carradine instructs, when there is considerable support in the record for a claimant's subjective allegations of pain, the ALJ cannot merely find Bohlmann's allegations are exaggerated because they are not consistent with her daily activities.  The ALJ's discussion in this case, by itself, is not a sufficient analysis to discredit Bohlmann's subjective claims of pain.  See Carradine 360 F.3d at

12

756; Witt v. Barnhart, 446 F. Supp. 2d 886, 901-03 (N.D. Ill. 2006); Lawson v. Barnhart, 455 F.

Supp. 2d 747, 772 (N.D. Ill. 2006).

    This Court is not suggesting that the ALJ's credibility determination was incorrect.

Bohlmann may in fact be exaggerating.  However, finding a claimant's subjective claims of pain

to be not credible based solely on the claimant's daily activities is insufficient.[4]  See Prochaska

v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (upholding a credibility determination where ALJ

relied on other factors as well as claimant's daily activities); Suarez v. Barnhart, 2006 WL

3505845 at 12 (N.D. Ill. 2006) ("[T]his case is not a case like [Carradine]. . . . Here, the ALJ

discussed [the claimant's] daily activities as one facet of his credibility determination.").  SSR

96-7P provides a non-exhaustive list of some of the factors that the ALJ could have considered

besides only daily activities.  For example, the location, duration, frequency, and intensity of the

claimant's pain, precipitating or aggravating factors, medication dosage and side effects,

treatment other than medication, any measures used by the claimant besides medication, and any

other factors concerning the individual's functional limitations and restrictions.  Carradine

requires the ALJ to provide more elaboration.  As a result, a remand is warranted.

    In summary, while the ALJ indicated he considered Bohlmann's allegations of pain, the

ALJ did not engage in an adequate discussion to properly discount those allegations.  An ALJ

may not discount Bohlmann's claims of pain solely on the basis that those claims are

---

[4]The ALJ's only remaining discussion of Bohlmann's credibility is where the ALJ proceeds to recant portions of Bohlmann's testimony.  However, merely recanting some parts of the claimant's testimony does not constitute an explanation for finding one not credible. See Giles, ex rel Giles, v. Astrue, - - - F.3d - - - 2007 WL 1112587 at 6 (7th Cir. 2007).  The ALJ has an obligation to explain the basis of his assessment if he finds the claimant not credible.  Id. at 5.  Merely recanting Bohlmann's testimony does not indicate to this Court how or if the ALJ finds the testimony weighs against Bohlmann's credibility.  Even if this Court were to assume the ALJ was pointing out specific portions of Bohlmann's testimony that undercut her credibility, which it cannot, the ALJ has failed to provide the requisite bridge for this Court to follow the ALJ's analysis. Haynes, 416 F.3d at 626.

inconsistent with her daily activities. Therefore, the ALJ failed to adequately discuss all issues regarding Bohlmann's credibility and a remand is warranted

**III.**   **CONCLUSION**

The ALJ's determination that Bohlmann's treating physician was not entitled to controlling weight was supported by substantial evidence, but the ALJ's analysis of the claimant's credibility was not supported by substantial evidence.  As a result, this Court **GRANTS** Bohlmann's request and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The clerk is instructed to term the case.

**SO ORDERED.**

Dated this 25TH  Day of April, 2007.

<u>S/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge